NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 20 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 13-50504 |
| | ) | |
| Plaintiff - Appellee, | ) | D.C. No. 3:04-cr-00157-DMS-1 |
| | ) | |
| v. | ) | MEMORANDUM* |
| | ) | |
| JUAN MANUEL MEDRANO-HERNANDEZ, | ) | |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |

Appeal from the United States District Court
for the District of Southern California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted March 3, 2015
Pasadena, California

Before: PREGERSON, FERNANDEZ, and NGUYEN, Circuit Judges.

Juan Medrano-Hernandez appeals the district court's judgment of October 4,

2013, that ordered his imprisonment for eight months upon revocation of his term

of supervised release, which arose out of his false statement conviction on July 16,

---

*This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

2004.  <u>See</u> 18 U.S.C. § 1001.  He contends that the district court erred when it determined his Criminal History Category ("CHC") under the Sentencing Guidelines.  <u>See</u> USSG §7B1.4(a), p.s. (2012).  We affirm.

In 2004, Medrano was charged with making a false statement to a federal agent.  <u>See</u> 18 U.S.C. § 1001.  He pled guilty and on July 16, 2004, he was sentenced to sixteen months in prison and three years of supervised release.  The district court calculated his CHC as category IV.  His term of supervision commenced on October 7, 2004.  Medrano violated his term of supervised release and at his 2011 revocation hearing the district court recalculated his CHC as category III.  His new term of supervision began on October 19, 2011.  Medrano again violated supervised release, and at his 2013 revocation hearing the district court placed him in CHC IV as it had when he was originally sentenced.  Medrano argues that in determining his CHC at the time of that second revocation hearing, the district court was required to use the CHC that was used at the time of his first revocation hearing.  We disagree; the district court was required to use the CHC calculated at the time he was sentenced for his violation of 18 U.S.C. § 1001.

The most salient guideline policy statement indicates that the range of imprisonment that should be applied upon revocation is set forth in a table that provides a matrix which takes account of the grade of the violation and the CHC.

<u>See</u> USSG §7B1.4(a), p.s. (2012). The heading for the CHC axis is "Criminal History Category*," and the footnote itself provides: "*The criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision." <u>Id.</u> That means that we should look to the CHC at the time that the sentence was originally imposed upon the defendant on account of the crime that he is being punished for.[1] And to make that even more clear, it is the original sentence to "a" term of supervision, not the CHC at the time some later term is, or was, adopted. In any event, if the district court consistently applied the policy statement, the CHC used at the most recent revocation would be the original CHC. We recognize that the Commission added an application note. <u>See</u> USSG §7B1.4, p.s., comment. (n.1) (2012). It, again, indicates that the relevant time is when the defendant was originally sentenced. <u>See id.</u> It also emphasizes that the CHC "is not to be recalculated" because there is no reason to do so. <u>Id.</u> And if, somehow, the CHC had not been calculated before, the court must decide what the CHC would have been at the time defendant was originally

---

[1]Of course, the crime for which the defendant is being punished is the one that brought about his criminal sentence in the first place — the original sentence if you will. <u>See</u> <u>United States v. Clark</u>, 984 F.2d 319, 321 (9th Cir. 1993) (per curiam). The defendant is not being punished for other crimes, even ones that have led to the revocation. <u>See</u> <u>United States v. Miqbel</u>, 444 F.3d 1173, 1182 (9th Cir. 2006); <u>United States v. Soto-Olivas</u>, 44 F.3d 788, 791 (9th Cir. 1995). There would be little reason to recalculate the CHC at that point.

sentenced.  Id.  To read the provisions as Medrano would have them read would render the word "originally" superfluous.  In addition, in the Commission's introduction to the chapter in question it declares that the CHC shall be "the violator's criminal history category calculated at the time of the initial sentencing." USSG Ch.7, Pt.A, intro. comment. 4 (2012).  Medrano's initial sentencing took place in 2004.

Medrano then argues that because he has imagined an ambiguity, we should apply the rule of lenity and read the provision his way.  But we see no need to reify that eidolon.  Simply put, to the extent that the policy statement is not perfectly crystalline,[2] any ambiguity is far from grievous.[3]  While the rule of lenity can be applied to guideline interpretation,[4] it does not apply here.

Nor do we see any reason to deviate from our analysis regarding the policy statements and Medrano's current violation on the basis that the district court chose to deviate from the policy statements at the time of Medrano's first

---

[2]See DePierre v. United States, __ U.S. __, __, 131 S. Ct. 2225, 2237, 180 L. Ed. 2d 114 (2011).

[3]See Muscarello v. United States, 524 U.S. 125, 138–39, 118 S. Ct. 1911, 1919, 141 L. Ed. 2d 111 (1998).

[4]See United States v. Leal-Felix, 665 F.3d 1037, 1040 (9th Cir. 2011) (en banc).

4

violation.[5]  Although at the time of the first revocation Medrano garnered a

calculation benefit to which he was not entitled, no amount of sortilege will enable

him to turn that single ryal into a treasure trove.

AFFIRMED.

---

[5]The policy statements in 2011 did not materially differ from those in 2013. Compare USSG §7B1.4, p.s. (2010), with USSG §7B1.4, p.s. (2012).